IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| STATE OF ARIZONA, | ) |
|     Plaintiff, | ) |
| vs. | ) No. |
| | ) CR2012-007897-001DT |
| DAN JAY EARL, | ) |
|     Defendant. | ) |

Phoenix, Arizona
February 24, 2015
3:15 p.m.

BEFORE:  THE HONORABLE VIRGINIA L. RICHTER, JUDGE PRO TEM

REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATE'S MOTION TO DISMISS WITHOUT PREJUDICE

Renée A. Mobley, RPR, CSR
Certified Reporter
Certificate No. 50500                                           (COPY)

```
 1                A P P E A R A N C E S

 2

 3

 4   On Behalf of the State:

 5           Mr. Scott M. Blum
             Deputy County Attorney
 6

 7
     On Behalf of the Defendant:
 8
             Mr. Thomas A. Gorman
 9           Attorney at Law

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```


P R O C E E D I N G S

    THE COURT: This is the time set for hearing in CR 2012-007897, State of Arizona vs. Dan Jay Earl.

    Could I have appearances, please?

    MR. BLUM: Scott Blum on behalf of the State.

    MR. GORMAN: Good afternoon, Your Honor. Tom Gorman appearing with Mr. Dan Earl, who is present ready to proceed.

    THE COURT: And, Mr. Earl, if you would please state your full name and date of birth.

    THE DEFENDANT: Dan --

    MR. GORMAN: Stand up.

    THE DEFENDANT: Dan Jay Earl. May 15, 1976.

    THE COURT: Thank you.

    Mr. Blum.

    MR. BLUM: Judge, we briefly spoke in chambers. I have talked with defense counsel.

    At this time, the State is going to move to dismiss without prejudice.

    It is a victim case, and if it ends up that there is any additional information or fraud that was learned, the State should have the right to review that.

    I want to make a record as to the reason why the State is dismissing and we're requesting a dismissal.

1   At noon, when the judge asked us to call all of
2  our witnesses, I called our all -- I recalled all of my
3  witnesses, and a John Scotello, which is the finance
4  manager, is now indicating an extreme desire not to be
5  present.  However, he did say he would honor the subpoena.
6  However, he has recanted.
7          By that, I mean he has changed what he has
8  previously stated.  He now says that Lund Cadillac was
9  stupid -- those were his words -- for heading off the car,
10 a 2007 Cadillac, and they were stupid for letting him have
11 the vehicle.  He had his -- he has his opinions, and he
12 indicated that.
13         And based on that, I had a personal contact with
14 him on the phone two weeks ago.  I reminded him that he
15 did not state that to me.  I can see nowhere in the file
16 where this was ever learned by the previous prosecutor
17 back in 2011, Jeff Parr.  Through all the notes, this
18 appears to be information as what I consider Brady,
19 recanting and learning that today at noon.
20         For that reason -- and I have contacted
21 Lund Cadillac, who is the main victim.  I've contacted
22 their victim attorney and informed them of this
23 information and the State's process.
24         THE COURT:  Mr. Gorman, any objection to
25 dismissal without prejudice?

1    MR. GORMAN:  No, Your Honor, but I do want to
2 make a brief record.
3    THE COURT:  All right.
4    MR. GORMAN:  It is this:  Is that the Court is
5 aware Mr. Earl is charged with theft under the provision
6 of unauthorized taking with intent to permanently deprive.
7    There has been a campaign by Lund to really
8 attack this man and slur his good reputation.
9    He recently was named by -- is it the Gilbert
10 Grade School?
11    THE DEFENDANT:  Gilbert Public Schools.
12    MR. GORMAN:  Gilbert Public Schools, the parent
13 of the year for the work he did with the school, which was
14 charitable work in volunteering his time and, et cetera.
15 He has a great reputation in the community.
16    And this started with Lund Cadillac offering a
17 zero percent financing on a 2008 Escalade, and Mr. Earl
18 responded to that.
19    His position and my position -- and I think it's
20 a righteous position -- is that he had an installment -- a
21 retail installment contract with Lund Cadillac as the
22 creditor.  It was for zero percent interest.
23    He left his car, which was a 2007 Escalade of
24 significant value.  It was referenced in the retail
25 installment contract.  Lund was the creditor.

Zero percent.  All the terms were there.  A down payment was expressly acknowledged in the contract.  He signed a second contract with them, a purchase agreement.  Lund was acting as the creditor financier for him.  Lund was the contract selling the car to him.

Lund violated the contract and violated the law when on September -- within two weeks of the September 9th transaction, they paid off the loan on his car.  And then on September 22nd, which was -- the transaction was the 9th.  So however many days that is.  They transferred title of his car into their name.  They had possession of his vehicle.  They had the title to it.  They paid off the note.

All of that was against the law by statute.  The statutes are cited in the requested jury instructions.

And what Mr. Earl did when they contacted him and told him:  We're not giving you zero percent.  We're going to give you a new financing deal.  It got up to almost eight percent.  There is a retail installment contract I'm not going to make part of the record.  It was disclosed in discovery, where in November, they offered him a 7.79 percent interest rate.  That's a great difference between zero percent.

What Lund did -- what Lund did -- not what he did was illegal.  It was against statute.  It was in violation

Case 2:13-bk-18751-EPB   Doc 181-4   Filed 01/09/18   Entered 01/09/18 23:14:08   Desc Exhibit Exhibit D   Page 6 of 12

Zero percent.  All the terms were there.  A down payment was expressly acknowledged in the contract.  He signed a second contract with them, a purchase agreement.  Lund was acting as the creditor financier for him.  Lund was the contract selling the car to him.

Lund violated the contract and violated the law when on September -- within two weeks of the September 9th transaction, they paid off the loan on his car.  And then on September 22nd, which was -- the transaction was the 9th.  So however many days that is.  They transferred title of his car into their name.  They had possession of his vehicle.  They had the title to it.  They paid off the note.

All of that was against the law by statute.  The statutes are cited in the requested jury instructions.

And what Mr. Earl did when they contacted him and told him:  We're not giving you zero percent.  We're going to give you a new financing deal.  It got up to almost eight percent.  There is a retail installment contract I'm not going to make part of the record.  It was disclosed in discovery, where in November, they offered him a 7.79 percent interest rate.  That's a great difference between zero percent.

What Lund did -- what Lund did -- not what he did was illegal.  It was against statute.  It was in violation

1  of the retail installment contract and it was in violation
2  of the purchase agreement.
3          And the statutes which I have provided the
4  Court -- and I want to put these additional statutes on
5  the record -- demonstrated that he had a legal right per
6  statute to hold that car, not with intent to permanently
7  deprive, but as a remedy -- a civil remedy until he got
8  his vehicle back with the same finance agreement that he
9  dropped it off.
10          I'm just putting this on the record.
11  A.R.S. 441371 supports his position.  A.R.S. 201105
12  supports his position.  A.R.S. 472711 supports his
13  position.  A.R.S. 44286 supports his position.
14  A.R.S. 479203 supports his position.
15          Additionally, *State vs. Logan*, 17 Pacific 3rd,
16  1010 supports his position in terms that at the time of
17  the taking, which was the time he drove away with the car,
18  the 2008, he was authorized at the time of the taking --
19  and the jury would have to be instructed on this -- per
20  the contract -- and Lund would dispute this.  To take that
21  car, they breached the contract; they breached both of
22  them; they breached the IRS statutes I've cited and the
23  statutes I've cited in my jury instructions.
24          And he was within his civil rights to protect not
25  only his financial interest, but he's a father of three

young girls and a wife that he supports, and not let them commit, which is called yo-yo financing. And that's why the Truth and Lending Act was passed by the Federal Government, to prevent these type of things.

This is not some old woman who he's accused of stealing a car from. This is a highly sophisticated, prosperous alleged victim who solicited him, and then they turned the tables on him and they did so illegally.

Now, additionally, he has suffered greatly. They have sued him civilly and he was in a civil lawsuit, and it was in front of Judge Fenzel of the Superior Court. And for two years, he admitted he had Lund's -- what Lund alleged was their car, the 2008.

Judge Fenzel never ordered him to return it until the date in the Indictment. He was indicted September 9th through May of 2012. That's the month that Judge Fenzel ordered him to return the car.

So he was in civil litigation for two years, and Judge Fenzel had never ordered him. And then within 24 hours of Judge Fenzel ordering him to return the car, Mr. Earl -- who, by that time, was representing himself pro per because he ran out of money for a civil lawyer -- filed a Motion For Reconsideration to Judge Fenzel. But because he had respect for the Court and the law, he returned the car.

8

Case 2:13-bk-18751-EPB    Doc 181-4    Filed 01/09/18    Entered 01/09/18 23:14:08
Desc Exhibit Exhibit D    Page 8 of 12

1  In the interim, Judge Fenzel received the motion.
2 It was filed with the clerk.  And, apparently, he had a
3 change of heart and reversed his order.  And this is
4 public record.  And he said he did not have to return the
5 car.
6  So this is clearly a civil dispute.  Lund has
7 paid the investigator, who's present here, who was hired
8 by Lund.  The police weren't good enough for them.  They
9 paid that private investigator $11,000, who harassed
10 Mr. Earl and his family.
11  This man showed up when Mr. Earl was out with his
12 three daughters at a public restaurant.  They came out of
13 the restaurant and they found this man, who's sitting in
14 the back of the courtroom, under his car planting a
15 GPS tracking device.  That's a trespass.  That's illegal.
16  Mr. Earl had no idea who this man was.  His
17 daughters were present, who are pre-teenagers.  He asked
18 him what he was doing under his car.  This is -- that's
19 pure harassment.  And then when Mr. Earl told him to
20 leave, he removed the GPS tracker.
21  And then Lund got another police officer to go
22 out and accuse him of theft for removing a GPS tracker
23 from his own car.
24  And Lund has attempted in Bankruptcy Court to
25 seize his home.

1 Is there any litigation pending presently?
2 THE DEFENDANT: Yes.
3 MR. GORMAN: There is more litigation presently.
4 So this is not over for him, by any means.
5 And our position is he committed no crime. If we
6 went to trial, he would be acquitted. He had legal rights
7 that he asserted. There is really no facts in dispute.
8 And so, I wanted to state this on the record
9 because I would be remiss in my duty as his lawyer to just
10 leave and pretend that he's some criminal who's got away
11 with something. He has got away with nothing. He
12 suffered. His wife has suffered. His children have
13 suffered.
14 And the money that has been expended by Lund to
15 go after him and what he has endured is unbelievable. He
16 was reindicted and charged with a mandatory prison offense
17 if he was convicted. And he is not going to be
18 intimidated because he has integrity. And he would not
19 take a misdemeanor plea because he did nothing wrong and
20 he could not go back and look at his wife and his children
21 when he's been telling them he's doing the right thing
22 and take a plea. So he wasn't going to.
23 I would like to compliment Mr. Blum for doing the
24 right thing. He came onto the case late. He re-evaluated
25 it. I think he's objective and he's done the right thing.

So that's what I wanted to put on the record.

         THE COURT: All right. Your comments are noted for the record.

         The State's motion is granted.

         Mr. Earl, I don't know if you posted a bond of any kind or if you were simply on OR release, but --

         THE DEFENDANT: OR.

         THE COURT: All right. This matter is concluded for now. Court will be in recess.

         (WHEREUPON, the proceedings were concluded at 3:27 p.m.)

                       * * * * * * *

1
2
3
4
5
6
7     C E R T I F I C A T E
8
9
10      I, RENÉE A. MOBLEY, RPR, a Certified Reporter in
11 the State of Arizona, do hereby certify that the foregoing
12 11 pages constitute a full, true, and accurate transcript
13 of the proceedings had in the foregoing matter, all done
14 to the best of my skill and ability.
15      SIGNED and dated this 11th day of March, 2015.
16
17
18           /s/  Renée A. Mobley, RPR
19           RENÉE A. MOBLEY, RPR
20           Certified Reporter
21           Certificate No. 50500
22
23
24
25