Ryan J. Lorenz, #019878
**CLARK HILL PLC**
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone:    (480) 684-1100
Facsimile:    (480) 684-1167
Email:        rlorenz@clarkhill.com

*Attorneys for Lund Cadillac LLC*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| In Re:<br>RACHAEL EARL,<br><br>                    Debtor. | Proceedings Under Chapter 7<br><br>Case No. 2:13-bk-18751-EPB<br><br>**LUND CADILLAC LLC'S RESPONSE TO DEBTOR'S OBJECTION TO LUND CADILLAC LLC'S PROOF OF CLAIM** |

Lund Cadillac LLC ("Lund") through counsel, hereby responds to the Debtor's objection [doc. 181], as amended [doc. 182, 184] to Lund Cadillac's proof of claim [cl. 4-1], as amended [cl. 4-2]. For well over three years, the Debtor made no objection to Lund's claim. The Debtor now objects, though the core rights were adjudicated in a previous bankruptcy and in state court litigation in 2011-2013. The Debtor's non-filing spouse, Dan Earl, purchased a luxury SUV, a 2008 Cadillac Escalade ("2008 Escalade") from Lund Cadillac on September 9, 2009. Mr. Earl kept the 2008 Escalade for years, racking up tens of thousands of miles, damaging it and never paying a dime on the installment contract for it.

A state court judge ordered Mr. Earl to return the 2008 Escalade in May 2012. The 2008 Escalade had depreciated. Before that, Lund had no choice but to mitigate its damages and sell Mr. Earl's trade-in, a 2007 Cadillac Escalade ("2007 Escalade"). As a

contract matter, Lund incurred tens of thousands of dollars in attorneys' fees, recoverable under state law to enforce a contract under A.R.S. § 12-341.01. These were included in the proof of claim.

The claim is valid and should be allowed in full. The damages are supported by evidence attached to the proof of claim. The objection is without merit. The state court lawsuit was dismissed because to do otherwise would have been a stay violation. 11 U.S.C. § 362(a). The criminal case dismissal is irrelevant.

This response is supported by the attached memorandum of points and authorities which is incorporated by reference.

DATED this 14th day of February 2018.

**CLARK HILL PLC**

By:*/s/ Ryan Lorenz*
       Ryan J. Lorenz
       *Attorneys for Lund Cadillac LLC*

<u>**Memorandum of Points and Authorities**</u>

## I.    FACTUAL BACKGROUND

On December 9, 2009, Mr. Earl contracted to purchase the 2008 Escalade. The contract is attached to Lund's proof of claim as an exhibit to its state court complaint in Maricopa County, Arizona Superior Court case no. CV2011-055722 ("*Lund v. Earl*"). The complaint with exhibits is attached to this response as Exhibit 1. Mr. Earl was to trade in his 2007 Cadillac Escalade as part of the consideration. *Lund v. Earl* complaint, Exhibit A. Mr. Earl could not be approved for financing. *Lund v. Earl* complaint, para. 14. Meanwhile, Lund paid off the 2007 Escalade loan ($38,784.56) so that it could acquire clear title to Mr. Earl's trade. *Lund v. Earl* complaint, Exhibit C.

2

Since financing terms under the contract were not available, Lund made adjustments to the contract. Lund offered these terms to Mr. Earl in a revised form of contract. An analysis of the terms is below:

| | Original Deal as Set forth in Purchase Agreement and Retail Instalment Sale Contract – GMAC Flexible Finance Plan [signed]. See Dan Earl Declaration, Ex. 2B | Approved Deal as Set forth in Purchase Agreement and Retail Instalment Sale Contract – GMAC Flexible Finance Plan [unsigned] See Dan Earl Declaration, Ex. 2E | Comparison[1] |
|---|---|---|---|
| Purchase Agreement | | | |
| Price | $75,000.00 | $72,000.00 | $3,000.00 lower |
| Trade allowance | 40,300.00 | 44,000.00 | 3,700.00 higher |
| Trade pay-off | 38,000.00 | 38,700.00 | 700.00 higher |
| Net trade value | 2,300.00 | 5,300.00 | 3,000.00 higher |
| Rebate | 0.00[2] | 8,500.00 | 8,500.00 higher |
| Sales tax | 2,880.10 | 1,788.50 | 1,091.60 lower |
| License and registration | 1,199.42 | 1,199.42 | Same |
| Dealer service fee | 469.00 | 469.00 | Same |
| ADEQ | 5.00 | 5.00 | Same |
| Warranty | 500.00 | 500.00 | Same |
| Total price | 39,753.52 | 28,461.92 | 11,291.60 Lower |
| **Amount financed (total price + trade pay-off)** | **$77,753.52** | **$62,161.92** | **$15,591.60 lower** |
| Installment Contract | | | |
| Interest rate | 0.00% | 7.79% | 7.79% higher |

[1] Green = more advantageous to buyer.  Red = more advantageous to seller/lender.  Blue = advantageous to neither buyer nor seller/lender.
[2] Mr. Earl elected to have his rebate of $8,500.00 sent to him.  Thus, it was not a down-payment credit.

3

216901156.1 31871/133876

| | | | |
|---|---|---|---|
| Installments | 72 | 72 | Same |
| Installment amount | $1,079.91 | $1,087.01 | $7.10 higher |
| Trade value | 40,300.00 | 44,000.00 | 3,700.00 higher |
| Trade pay-off | 38,000.00 | 38,700.00 | 700.00 higher |

Though Lund raised the interest rate from 0.0% it reduced the amount financed by $15,591.60. This resulted in an installment payment $7.10 higher per month. If Mr. Earl had come back and signed the revised contract and paid $7.10 more per month, he could have kept the 2008 Escalade. He refused…for over two and a half years.

Under the signed contract,

> [T]his Order shall become binding on Seller only when accepted by a Sales Manager and, if a time sale, (1) Purchasers credit has been approved by a financing institution and such institution agrees to purchase a retail installment contract based on the Order…

*Lund v. Earl* complaint, para. 8, Exhibit B.[3] This is what is known as a conditional delivery term. If financing cannot be secured, the deal can be unwound. The parties are to be restored to their positions *status quo ante*. Mr. Earl did not like that because he would have to pay for the 2007 Escalade (that Lund had paid off) or, under the modified contract offered to him, pay for the 2008 Escalade. Instead, he did nothing.[4]

---

[3] In virtually every motor vehicle purchase, there are two contemporaneous documents, among others, that state the terms: 1) the purchase order and 2) installment contract. As a gross generalization, the purchase order defines the relationship between buyer and seller. The installment contract defines the relationship between borrower and lender. "[W]e read the documents in this case not as separate and sequential contracts with the Purchase Agreement being completely performed and the Sales Contract becoming the exclusive controlling agreement, but rather as two parts of one contract. Together, the documents appear to complement each other, whereas standing alone neither document contains all the provisions necessary for an installment sale on credit." *Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 456, 11 P.3d 413, 415 (Ct. App. 2000).

[4] By now, it should be painfully obvious. The Earls lived in their previous home, at 1311 S. Claiborne Ave., Gilbert, Arizona 85296 ("Claiborne Property") for over half a decade

4

On March 4, 2010, the Debtor filed her first bankruptcy case in this court (case no. 2:10-bk-05650-RJH). That case was short-lived and dismissed. The Debtor then filed a second chapter 13 case (case no. 2:10-bk-27333-SSC). On March 24, 2011, Lund obtained an order clarifying the automatic stay, in which Judge Curley said the 2008 Escalade "is not property of the estate pursuant to 11 U.S.C. § 541. Thus, the 2008 Escalade is of inconsequential value. The Court finds and declares that the 2008 Escalade is the property of Lund Cadillac, as of the date of demand for return of the same." *Lund v. Earl* complaint, Exhibit D.

On May 23, 2012, in *Lund v. Earl,* Hon. Alfred Fenzel, ordered "that Defendants will return the car to the Plaintiff within 48 hours." A copy of that order is attached as Exhibit 2. Mr. Earl (through a lawyer friend of his), returned the 2008 Escalade on May 25, 2012, two years, eight months, and sixteen days after Mr. Earl had taken the 2008 Escalade from Lund's premises.

Meanwhile, Mr. Earl was twice charged with criminal theft. The Debtor and Mr. Earl have feigned surprise about the state bringing a criminal prosecution against Mr. Earl for failing to return an expensive luxury SUV to its rightful owner after having it for years and paying nothing for it. In fact, Lund improved Mr. Earl's credit by paying off the 2007 Escalade.

Mr. Earl claims that the whole deal Lund put together was a "yo-yo sale." This, he claims, is because he was deceived into signing at 0.0% interest, but then offered a higher

filing and frivolously defending lawsuit after lawsuit and bankruptcy after bankruptcy without making a single mortgage payment. The Earls' modus operandi is, never pay for anything if you can use the laws to shield you. They did it with their former home, the Claiborne Property. They did it with a luxury SUV, the 2008 Escalade. They are still doing it by living in the estate's property at 881 Sunnyvale, Gilbert, Arizona ("Sunnyvale Property"). They have paid zero rent to the trustee for years. The Earls have to be privately laughing at the legal system that benefitted them so much during the last ten years I which they have lived a luxury lifestyle at the expense of their creditors.

5

interest rate. Lund would have to be the worst fraudster ever if it "yo-yoed" a customer by reducing the purchase price by over $15,000. That is not a yo-yo sale and Mr. Earl knows it.

Mr. Earl also fails to tell the court about the nature of conditional delivery. The contract in this case is for delivery of a motor vehicle, conditioned on obtaining financing for the buyer. Such contract provisions are universally recognized as useful and legitimate terms.

> We agree with the trial court's characterization of the expectations in this case that a reasonable who does not have the money to pay for a vehicle at the time of purchase would assume that a vehicle which is driven off the lot, contingent upon financing approval, would have to be returned if the financing was not approved. The trial court stated that it would be unreasonable to assume that if financing was not approved, the person in possession of the vehicle could keep it with no further obligation to pay.

*Ed Bozarth Chevrolet, Inc. v. Black*, 32 Kan. App.2d 874, 879, 96 P.3d 272, 275 (2003). See also, *Castellana v. Conyers Toyota*, 200 Ga. App. 161, 407 S.E.2d 64 (1991); *Dauti v. Hartford Auto Plaza, Ltd.*, 213 F.Supp.2d 116 (D. Conn. 2002); *King v. King Motor Co. of Ft. Lauderdale, Inc.*, 900 So.2d 619, (Fla. App. 2005); *Scott v. Forest Lake Chrysler-Plymouth-Dodge*, 611 N.W.2d 346, 352 (Minn. 2000) ("Each agreement is dependent upon financing approval…the retail installment contract expressly states that it may not be binding…").

If Mr. Earl did not like the lower price and substantially the same installment payment Lund offered him, he had a very clear obligation. He had to return the 2008 Escalade, collect the 2007 Escalade, arrange to reimburse Lund the payoff on the trade-in, and go about his business. Instead, he stole the 2008 Escalade, ran up tens of thousands of miles on it and paid nothing. And he wonders why he was facing felony prosecution?

6

The Debtor questions Lund's damages. It is quite simple. Lund started with a free and clear 2008 Escalade. It received an encumbered 2007 Escalade, that it paid off for $38,784.56. Thus, it was out that sum. After years of Mr. Earl's indifference to his obligations to return the 2008 Escalade, Lund determined that it had to mitigate its damages and sold the 2007 Escalade. After reconditioning costs and preparation for sale, it lost $4,444.17. See Declaration of Alice Crapser, attached as Exhibit 3. Lund also incurred $10,969 to an investigator tasked with trying to recover the 2008 Escalade from the Debtor and Mr. Earl. *Id.*

Since Mr. Earl determined to keep the 2008 Escalade feloniously, Lund was out another $75,000, the purchase price of the 2008 Escalade. *Lund v. Earl* complaint, Exhibits A and B. After Lund finally got the 2008 Escalade back in May 2012, Lund sold it for $33,000 in its asset sale. See redacted spreadsheet attached as Exhibit 4. Thus, Lund netted a loss of $42,000 on the 2008 Escalade.

All along the way, from late 2009 through the date of the Debtor's petition in this case, Lund incurred $55,567.22 in attorneys' fees and costs. These are recoverable both under the contract and state law. A.R.S. § 12-341.01.

| Item | Amount | Evidence |
|---|---|---|
| Net trade-in loss | $4,444.17 | Declaration of Alice Crapser, Finance Director |
| Investigator cost | 10,969.00 | Declaration of Alice Crapser, Finance Director |
| Gross loss of 2008 Escalade | 75,000.00 | Contract price |
| Mitigation of 2008 Escalade loss | (33,000.00) | Spreadsheet of used inventory sold to asset buyer |
| Pre-petition attorneys' fees and costs | 55,567.22 | Invoices attached to proof of claim |
| **Total** | **$112,980.39** | |

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    ARGUMENT AND ANALYSIS

### A.    Lund's Proof of Claim is Valid

A creditor may file a proof of claim. 11 U.S.C. § 501(a). "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. § 502(a). A proof of claim executed and filed according to applicable rules is presumed to be prima facie valid. Fed. R. Bankr.P. 3001(f). If the allegations in a proof of claim "set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim." *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991).

The Debtor does not dispute the core transactional facts. The Debtor does not dispute that Mr. Earl had the 2008 Escalade for over two and a half years. The Debtor appears to quibble with Lund's damages. All of the damages are supported by evidence attached to the proof of claim. The Debtor cites to a number of developments that have no bearing upon the Debtor's liability. The dismissal of the first civil action against the Debtor and Mr. Earl was due to the automatic stay. 11 U.S.C. § 362(a). The second civil action, *Lund v. Earl*, was dismissed for a similar reason. Though Judge Curley authorized Lund to recover the 2008 Escalade by declaring that it was Lund's property, Judge Curley (prudently) did not order that Lund could continue litigation to establish and collect an unsecured debt. Since Judge Fenzel directed the return of the 2008 Escalade, Lund could only claim damages for breach of the conditional financing term. These damages were the depreciation and physical damage to the 2008 Escalade over the time of Mr. Earl's felonious possession. Thus, when the Debtor commenced this case in 2013, since Lund had gotten the 2008 Escalade back, it had nothing further it could litigate. Lund allowed the court to dismiss *Lund v. Earl* on the inactive calendar. Neither of these were dismissals on the merits.

216901156.1 31871/133876

Similarly, the Debtor makes hay of the dismissed criminal cases. Whether or not a prosecutor decided to dismiss the criminal case is a matter of prosecutorial discretion. It has nothing to do with civil liability for breach of contract, which is the basis for the claim. The dismissal of the prosecution against Mr. Earl is irrelevant.

The fact that Lund never obtained a money judgment against the Debtor and Mr. Earl does not invalidate its claim. The notion is wholly without merit. Moreover, given the presumption of validity of proofs of claims, it is astonishing that the Debtor waited years to object to a proof of claim filed in 2014. For well over three years, Lund's claim has been presumed valid. This is because it *is* valid and always has been.

## B.    Attorneys' fees are recoverable on Lund's proof of claim

"There is no general right to attorneys' fees for actions in bankruptcy. A party may, however, be entitled to attorneys' fees in the bankruptcy proceeding in accord with the applicable state law." *Collingwood Grain, Inc. v. Coast Trading Co., Inc. (In re Coast Trading Co., Inc.)*, 744 F.2d 686, 693 (9th Cir.1984); see also *Fobian v. W. Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153 (9th Cir.1991). Here, Lund's claims against the Debtor and her non-filing husband arose from state law. Because attorneys' fees are a part of the state law right and basis for the claim, they are recoverable by Lund as a general unsecured creditor. See also, *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec.*, 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (state law right to attorneys' fees preserved in bankruptcy adversary action); *In re SNTL Corp.*, 380 B.R. 204, 223 (9th Cir.BAP2007) (state law right to attorneys' fees preserved for estate against debtor).

There is no authority for the Debtor's proposition that the fees have to be blessed in a final judgment against Mr. Earl. But, to the extent the fees are disputed, they are the subject of a declaration under penalty of perjury on the face of the proof of claim signed by counsel undersigned. The quantity of attorneys' fees, for four years of pre-petition litigation against the Debtor and Mr. Earl, is reasonable. The Debtor does not specify

9

what about the quantity of fees is questionable. The Debtor does not dispute the existence of a contract relationship between the Debtor's marital community and Lund, under which attorneys' fees are recoverable. See A.R.S. § 25-214(B), (C) (either spouse may bind the marital community to an obligation).

## III. CONCLUSION

The Debtor's three years of indifference as to Lund's proof of claim should be dispositive. For three-plus years, the claim has been presumed valid. For eight years, Lund has been damaged and has waited patiently for the trustee to administer the Debtor's estate. The Debtor should not get to question a claim that has been presumed valid for three years. Moreover, the Debtor's arguments against the validity of the debt are without merit. They are unsupported by facts or authority. The Debtor's spouse had Lund's luxury SUV for two and a half years. Lund was damaged by that. The quantity of the debt is support as required by the rules. The claim should be allowed in full.

DATED this 14th day of February 2018.

**CLARK HILL PLC**

By:*/s/ Ryan Lorenz*_____
 Ryan J. Lorenz
 *Attorneys for Lund Cadillac LLC*

10

COPY of the foregoing served by
*email/mail this 14 day of February 2018, to:

U.S. Trustee
OFFICE OF THE U.S. TRUSTEE
230 N. First Ave., Ste. 204
Phoenix, AZ  85003

*Adam B. Nach
Joel F. Newell
LANE & NACH, P.C.
2001 East Campbell, Ste. 103
Phoenix, AZ  85016
Adam.nach@azbar.org
Joel.newell@lane-nach.com
*Attorneys for Diane M. Mann, Trustee*

*Monique Branscomb Wilhite
BRANSCOMB WILHITE LAW FIRM
5045 W. Baseline Road, Ste. 105-207
Laveen, AZ 85339
moniquewilhite@gmail.com
*Attorneys for Debtor*


*/s/ Shonda Ordonez* _____

11

216901156.1 31871/133876

# Exhibit 1



MICHAEL K. JEANES
Clerk of the Superior Court
By Martha Wanke, Deputy
Date 08/17/2011 Time 15:17:22
Description                    Amount
------- CASE# CV2011-055722 -------
CIVIL NEW COMPLAINT          301.00
-----------------------------------
TOTAL AMOUNT                 301.00
                Receipt# 21577345

Darrell E. Davis, #011442
Ryan J. Lorenz, #019878
**CLARK HILL PLC**
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone:   (480) 684-1107
Facsimile:   (480) 684-1167
Email:       ddavis@clarkhill.com
             rlorenz@clarkhill.com

Attorneys for Plaintiff Lund Cadillac, L.L.C.

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| LUND CADILLAC, L.L.C., an Arizona limited liability company, | Case No.  CV2011-055722 |
| Plaintiff, | **COMPLAINT** |
| v. | (Other Contract; Tort Non-Motor Vehicle: Other; Other Civil) |
| DAN J. EARL and RACHAEL EARL, husband and wife, | |
| Defendants. | |

Lund Cadillac, L.L.C. ("Lund Cadillac"), by counsel undersigned, for its Complaint against Defendants Dan J. Earl and Rachael Earl ("Defendants"), alleges as follows:

### GENERAL ALLEGATIONS

1.     Lund Cadillac is an Arizona limited liability company organized and existing under the laws of the State of Arizona.

2.     Defendants are residents of Maricopa County, Arizona.

3.     This court has subject matter jurisdiction over the claims and personal jurisdiction over the parties.

4.    Venue is proper in Maricopa County.

5.    All acts complained of were done on behalf or for the benefit of the Defendant's marital community.

6.    On September 9, 2009, Defendant Dan J. Earl executed and delivered to Lund Cadillac a Retail Installment Sale Contract GMAC Flexible Finance Plan (the "Contract") by which he agreed to make seventy-two (72) monthly payments in the amount of $1,079.97 for the purchase of a new 2008 Cadillac Escalade, VIN 1GYFK63818R157790 (the "2008 Escalade") from Lund Cadillac.  A true and correct copy of the Contract is attached hereto as "Exhibit A" and is incorporated by reference..

7.    On September 9, 2009, Defendants executed a Purchase Agreement, as a complementary document of the same transaction.  A copy of the Purchase Agreement is attached hereto as "Exhibit B," and is incorporated by reference.

8.    Under the Purchase Agreement, Defendants agreed that, **"When signed by Purchaser, this Order shall constitute an irrevocable offer to purchase the vehicle described in, and upon the terms in this Order and, if a time sale, upon the finance terms initially agreed to by Purchaser this Order shall become binding on Seller only when accepted by a Sales Manager and, if a time sale, (1) Purchasers credit has been approved by a financing institution and such institution agrees to purchase a retail installment contract based on the Order..."**

9.    On September 9, 2009, Defendant Dan J. Earl traded-in his used 2007 Cadillac Escalade, VIN 1GYFK63827R55922 (the "2007 Escalade") to Lund Cadillac in the proposed transaction to purchase the 2008 Escalade from Lund Cadillac.

10.    Solidarity Federal Credit Union ("Solidarity") financed Defendants' purchase of the 2007 Escalade and held a perfected lien against the 2007 Escalade.

11.    As of September 9, 2009, Defendants owed Solidarity the remaining balance of $38,784.56 on the 2007 Escalade.

2

12. On September 17, 2009, Lund Cadillac paid $38,784.56 to Solidarity to satisfy the balance owed by Defendants on the 2007 Escalade. A copy of a check dated September 7, 2009, from Lund Cadillac to Solidarity is attached hereto as "Exhibit C" and is incorporated by reference.

13. Pursuant to the Contract, Lund Cadillac's obligation to complete delivery of the 2008 Escalade was conditioned on obtaining financing and assignment of the Contract to a lending institution.

14. Defendants were not approved for financing.

15. Failure of the financing condition entitles each party to be restored to their status quo ante positions.

16. On March 4, 2010, Defendant Rachael Earl filed a Chapter 13 bankruptcy (Case No. 2:10-05650-RJH) ("1st Bankruptcy") in the United States Bankruptcy Court for the District of Arizona.

17. The Earls' mortgage lender, which had already foreclosed, obtained stay relief in the 1st Bankruptcy and initiated a forcible detainer action. After a series of continuances, on August 19, 2010, the court entered judgment declaring that the lender' was entitled to immediate possession of the home located at 1311 South Claiborne Avenue, Gilbert, Arizona 85296 ("Claiborne Property").

18. In spite of that declaration, the Earls still live at the Claiborne Property, presumably as trespassers.

19. On December 6, 2010, the court issued a writ of restitution for the Earls' physical removal from the Claiborne Property. The Earls evaded a deputy sheriff's attempted service from and after December 6, 2010.

20. In spite of a final judgment for forcible detainer and a writ of restitution, the Earls refuse to leave the Claiborne Property, which they still claim as their home,

3

though they have been foreclosed, evicted, and intentionally avoid encounters with law enforcement to remove them from the Claiborne Property.

21. On August 26, 2010, the 1st Bankruptcy was dismissed.

22. On August 27, 2010, Rachael Earl commenced a new Chapter 13 bankruptcy case (Case No. 2:10-27333-SSC) ("2nd Bankruptcy"). At the initial meeting of creditors, conducted on November 24, and December 1, 2010, Defendant Rachael Earl admitted that the Earls did not own the 2008 Escalade.

23. On November 24, 2010, Lund Cadillac moved for relief from the bankruptcy stay.

24. On March 9, 2011, Lund Cadillac's motion for stay relief came before the court for preliminary hearing. At the hearing, the court declared that the 2008 Escalade was not property of the Earls at any time during Rachael Earl's bankruptcy.

25. On March 21, 2011, Lund Cadillac sold the 2007 Escalade for $36,754.00, after investing a gross sum of $41,198.17 into payoff of the Earl loan and reconditioning of the 2007 Escalade to prepare it for sale. Lund Cadillac derived a loss of $4,444.17 from this sale.

26. In an attempt to recover the 2008 Escalade, Lund Cadillac incurred costs to an investigator totaling $10,969.00.

27. On March 24, 2011, the bankruptcy court entered a formal order declaring that the 2008 Escalade was not the Earls' property, a copy of this order is attached as Exhibit "D" and is incorporated by reference.

28. On April 27, 2011, a bankruptcy examination of Rachael Earl was conducted. Rachael Earl denied any rights to continued possession of the 2008 Escalade.

29. Pursuant to Section 4(f) of the Contract, Lund Cadillac is entitled to recovery of its expenses incurred as a direct result of Defendants' default and Lund Cadillac's recovery of the 2008 Escalade. Section 4(f) of the Contract specifically states,

4

"expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorneys' fees and court costs the law permits are also allowed expenses."

30.    Lund Cadillac is entitled to a return of the 2008 Escalade and reimbursement of $15,413.17 for losses on the 2007 Escalade and investigation costs, which are direct consequences of the Earl's misconduct.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

31.    Lund Cadillac incorporates each of the prior allegations as though the allegations were fully set forth in this claim for relief.

32.    Defendants are in default under the terms of the Contract for failing to return the 2008 Cadillac when financing could not be obtained and to make payment to Lund Cadillac for the 2007 Escalade pay-off..

33.    On December 30, 2009, Lund Cadillac demanded that Defendants return the 2008 Escalade. Defendants are in default under the terms of the Contract for failing to return the 2008 Escalade to Lund Cadillac and reimburse Lund Cadillac the 2007 Escalade pay-off.

34.    Pursuant to the Additional Terms and Conditions Section of the Contract, Lund Cadillac is entitled to its reasonable attorneys' fees and costs incurred in this matter. In the even judgment is rendered by default, Lund Cadillac will seek a minimum of $1,500.00 for its reasonable attorneys' fees. Additional Terms and Conditions Section of the Contract specifically states, **"You promise to pay reasonable collection costs and expenses, including attorneys' fees, if you default under this agreement."** Lund Cadillac is entitled to its reasonable attorneys' fees and costs incurred in this matter, pursuant to A.R.S. §§ 12-341.01 and 12-341, respectively.

5

## SECOND CLAIM FOR RELIEF

### (Conversion)

35.   Lund Cadillac incorporates by reference all prior allegations as though fully set forth in this claim for relief.

36.   From and after September 1, 2010, the Earls have had possession and control of the 2008 Escalade to such a serious degree that Lund Cadillac should rightfully be awarded the full value of the 2008 Escalade and/or possession of the 2008 Escalade.

## THIRD CLAIM FOR RELIEF

### (Trespass to Chattels)

37.   Lund Cadillac incorporates by reference all prior allegations as though fully set forth in this claim for relief.

38.   From and after August 28, 2010, the Earls intentionally dispossessed Lund Cadillac of its property, the 2008 Escalade, thereby causing Lund Cadillac damages in the form of lost value, depreciation, and other damages to be ascertained upon recovery of possession of the 2008 Escalade.

## FOURTH CLAIM FOR RELIEF

### (Pattern of Unlawful Activity)

39.   Lund Cadillac incorporates by reference all prior allegations as though fully set forth in this claim for relief.

40.   In the original transaction, Defendant Dan Earl made misrepresentations of fact on his credit application including, but without limitation:  (a) ownership of a viable business; (b) his home address; (c) the existence of a reliable income-producing investment property; (d) general solvency and ability to make the installment payments due under the installment contract related to the original transaction.

41. When financing could not be obtained, Defendant Dan Earl refused to execute new documents for approved financing, no-showed meetings, and declined Lund Cadillac's efforts to re-write the installment contract.

42. Defendant Dan Earl utilized temporary registration plates to continue to legally operate the 2008 Escalade and avoid detection by law enforcement that he was not the owner or registrant of the 2008 Escalade.

43. Defendant Dan Earl obtained an extension on the right to utilize a temporary registration plate for an additional forty-five days, which is not normally permitted under registration statutes.

44. Upon information and belief, Defendant Dan Earl has conspired and has entered into agreements with an acquaintance, David Allen, who holds a wholesaler or other motor vehicle sales license to permit Allen to possess the 2008 Escalade, while Earl operates other vehicles owned by Allen and places a dealer plate on those vehicles.

45. Upon further information and belief, David Allen has continuously supplied Dan Earl with vehicles in exchange for David Allen's possession of the 2008 Escalade.

46. David Allen is aware that the 2008 Escalade is not owned by the Earls.

47. The Earls failed to disclose their rights to possession of vehicles, agreements they have with David Allen, other vehicular assets or rights to possession of vehicles in either the 1st Bankruptcy or 2nd Bankruptcy.

48. The Earls have refused to offer any compensation to Lund Cadillac for the continued use, possession, or commercial advantage the Earls have obtained by continuously possessing the 2008 Escalade.

49. The Earls have failed and refused to surrender the 2008 Escalade, though it has been reported to law enforcement as a stolen vehicle.

7

50.     All facts and circumstances relating the Earls' acquisition and continuous possession of the 2008 Escalade have been accurately reported to law enforcement, and have been submitted for a charging decision to the Maricopa County Attorney's Office.

51.     On April 12, 2011, the State filed a direct complaint against Defendant Dan Earl, charging him with theft pursuant to A.R.S. § 13-1802(F)(2).

52.     Lund Cadillac is a person which sustained a reasonably foreseeable injury to its business or property by a pattern of unlawful activity or by a violation of A.R.S. § 13-2312 committed by the Earls.

53.     The Earls' pattern of unlawful activity, pursuant to A.R.S. § 13-2301(D)(4) involves, but is not necessarily limited to:

- theft [(b)(v) and A.R.S. § 13-1802];
- participating in a criminal syndicate [(b)(xiii)];
- obstructing or hindering criminal investigations or prosecutions [(b)(xiv)];
- asserting false claims [(b)(xv)];
- a scheme or artifice to defraud [(b)(xx) and A.R.S. § 13-2310];
- unlawful use of a means of transportation [A.R.S. § 13-1803];
- theft of a means of transportation [A.R.S. § 13-1814]; and
- trafficking in stolen property [A.R.S. § 13-2307].

54.     As a consequence of the foregoing, Lund Cadillac has incurred damages, recovery costs, investigation costs, attorneys' fees, which may properly be considered part of its damages occasioned by the conduct of the Earls.

55.     Pursuant to A.R.S. § 13-2314.04(A), Lund Cadillac has a right to recover its attorneys' fees and costs, as well as treble damages.

WHEREFORE, Lund Cadillac demands judgment against Defendants as follows:

A.     For an order directing Defendants to surrender the 2008 Escalade to Lund Cadillac, to provide location and total loss insurance information (including police report of theft, insurance carrier name, insurance policy number, effective dates of coverage, agent contact information), to revoke permission of any third party to use or possess the

8

2008 Escalade and to demand return of the 2008 Escalade for the purpose of surrender under this order.

B.    For the principal sum of $15,413.17, plus other consequential damages including wear and tear, mileage, used vehicle status, and other damages to the 2008 Escalade when returned, plus interest at the rate authorized by A.R.S. § 44-1201, from the date of judgment until paid in full;

C.    For an award of treble damages under A.R.S. §13-2314.04(A), based upon the value of the 2008 Escalade ($75,000) and the other damages prayed for in this complaint;

D.    For Lund Cadillac's reasonable attorneys' fees incurred herein, which in the event of judgment by default, shall be a minimum of $25,000, plus costs, and interest at the rate authorized by A.R.S. § 44-1201, from the date of judgment until paid in full;

E.    For post judgment attorneys' fees and costs as and when incurred; and

F.    For such other and further relief as the Court may deem just and reasonable under the circumstances.

DATED this 17 day of August 2011.

CLARK HILL PLC

By: _____
Darrel E. Davis
Ryan J. Lorenz
Attorneys for Plaintiff
Lund Cadillac, L.L.C.

9

# VERIFICATION

STATE OF ARIZONA )
                        ) *ss.*
County of Maricopa )

      Ryan Lorenz, being first duly sworn upon his oath, deposes and says:

      I am the attorney for Lund Cadillac, L.L.C., and, as such, I am authorized to make this verification; I have read the foregoing Complaint and Application and know the contents thereof, and the same *is* true to the best of my knowledge, information and belief.



                                     Ryan Lorenz

      SUBSCRIBED AND SWORN to before me this 17 day of August, 2011, by Ryan Lorenz, who is either personally known to me or who has satisfactorily identified himself.

                                     Notary Public

> OFFICIAL SEAL
> DEBORAH J. LUKAS
> Notary Public - State of Arizona
> MARICOPA COUNTY
> My Comm. Expires Sept. 9, 2012

# EXHIBIT A

# RETAIL INSTALMENT SALE CONTRACT
## GMAC FLEXIBLE FINANCE PLAN

150280

00280259    Dealer Number        Contract Number

| Buyer (and Co-Buyer) – Name and address (Include county and zip code) | Creditor (Seller name and address) |
|---|---|
| DAN J EARL<br><br>1311 S CLAIBORNE<br>GILBERT    AZ 85296   MARICOPA | LUND CADILLAC LLC<br>1311 E BELL RD<br>PHOENIX   AZ   85022 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay us, the Creditor, the Amount Financed and Finance Charge according to the payment schedule shown below. We will figure the Finance Charge on a daily basis.

| New or Used | Year | Make and Model | Vehicle Identification No. | Primary Use for Which Purchased |
|---|---|---|---|---|
| NEW | 2008 | CADILLAC    ESCALADE | 1GYFK63818R157790 | ☐ personal, family, or household  ☐ agricultural<br>☐ business                    ☐ |

Your trade-in is a:    Year  2007  Make  CADILLAC  Model  ESCALADE

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $ 2,300.00 is |
|---|---|---|---|---|
| 0.00 % | $ 0.00 | $ 77,753.52 | $ 77,753.52 | $ 80,053.52 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due | Or as Follows |
|---|---|---|---|
| 72 | $ 1,079.91 | Monthly beginning  10/24/09 | |

**Late Charge.** If a payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late, with a maximum charge of $10.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1 Cash price (including any accessories, services, taxes, and net trade-in payoff of $ _____ to _____ shown in 2 below)  $ 72,880.10 (1)

2 Total downpayment = (if negative enter "0" and see line 1 above)
  Gross trade-in $ 40,500.00 – payoff by seller $ 38,000.00
  = net trade-in $ 2,500.00      + cash $ N/A
  + other (describe)   N/A    $ N/A      $ 2,300.00 (2)

3 Unpaid balance of cash price (1 minus 2)   $ 75,380.10 (3)

4 Other charges including amounts paid to others on your behalf (Seller may keep part of these amounts.):

A Cost of optional credit insurance paid to the insurance company or companies
  Life       $    N/A
  Disability $    N/A      $    N/A

B Other insurance paid to the insurance company  $ 5.00  WASTE TIRE

C Official fees paid to government agencies  $    N/A

D Government taxes not included in cash price  $    N/A

E Government license and/or registration fees  1,199.42   LIC 1,199.42<br>LIC OR N/A

F Government certificate of title fees  $    N/A

G Other charges (Seller must identify who is paid and describe purpose)
  to LUNDER        DOC FEE   469.00
  to _____ for _____  N/A
  to LUND CADILLAC for GAP   300.00
  to N/A for N/A   N/A

---

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

Optional Credit Insurance.

☐ Credit Life: ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)

Premium:
  Credit Life $ _____
  Credit Disability $ _____

_____
(Insurance Company)

_____
(Home Office Address )

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below:

Other Insurance.

☐ _____
    Type of Insurance          Term

Premium $ _____

_____
(Insurance Company)

_____
(Home Office Address)

I want the insurance checked above.

X _____

| | | | | |
|---|---|---|---|---|
| to | for | $ | $ 2.13.42 (4) | X |
| Total other charges and amounts paid to others on your behalf | | | | Co-Buyer Signature         Date |
| 5 Amount financed (3 + 4) | | | $_____ (5) | |

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and we must sign it. No oral changes are binding.

Buyer Signs **X**                                    Co-Buyer Signs **X**

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

---

**For Used Vehicles Only:**

**Attention purchaser: sign here only if the dealer told you that this vehicle has the following problems(s) and that you agree to buy the vehicle on those terms:**

1. _____

2. _____

3. _____

Buyer **X** _____   Date _____   Co-Buyer **X** _____   Date _____

---

**WARRANTIES**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, except as described below for used vehicles. Making no warranties means that the Seller is selling the vehicle as is - not expressly warranted or guaranteed and without any implied warranties of merchantability (except as described below) or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

The following paragraph applies only if you are purchasing a used vehicle:

> **THE SELLER HEREBY WARRANTS THAT THIS VEHICLE WILL BE FIT FOR THE ORDINARY PURPOSES FOR WHICH THE VEHICLE IS USED FOR 15 DAYS OR 500 MILES AFTER DELIVERY, WHICHEVER IS EARLIER, EXCEPT WITH REGARD TO PARTICULAR DEFECTS DISCLOSED ON THE FIRST PAGE OF THIS AGREEMENT. YOU (THE PURCHASER) WILL HAVE TO PAY UP TO $25.00 FOR EACH OF THE FIRST TWO REPAIRS IF THE WARRANTY IS VIOLATED.**

☐ **IF THE BOX IS CHECKED, THIS CONTRACT IS SUBJECT TO A BROKER FEE PAID BY THE SELLER TO** _____

See back for other important agreements.

**Notice to the Buyer:** 1. Do not sign this contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the contract you sign.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

| You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it. | ANY INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS. | The Department of Financial Institutions regulates the Seller and can be contacted at 2910 North 44th Street, Suite 310, Phoenix, Arizona 85018, (602) 255-4421, if you have any complaints concerning this contract. |
|---|---|---|

Buyer Signs **X** _____   Date _____   Co-Buyer Signs **X** _____   Date _____

Co-Buyers and Other Owners - A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X** _____   Date _____   Address _____

Creditor Signs LUND CADILLAC LLC   Date _____   By **X** _____   Title _____

| Seller assigns its interest in this contract to: | ☐ GMAC | ☐ Nuvell National Auto Finance | ☐ GMACAB | ☐ Nuvell Credit Company, |
|---|---|---|---|---|
| under the terms of Seller's agreement(s) with assignee. | | | | |

| Assigned with recourse | | | Assigned without recourse or with limited recourse | | |
|---|---|---|---|---|---|
| Seller | By | Title | Seller | By | Title |

Z109 FR-AZ 9/2006 (For use in the State of Arizona) (1 of 4)          **Notice: See Other Side**
Copyright 2006 GMAC. All Rights Reserved.

**TRIPLICATE ORIGINAL - DEALER'S COPY**

# OTHER IMPORTANT AGREEMENTS

## 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** The Finance Charge is figured on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed using the actual number of days in the year.

**b. How we will apply payments.** We will apply each payment first to the earned and unpaid part of the Finance Charge, and then to the unpaid part of the Amount Financed.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.** You give us a security interest in:
1. The vehicle and all parts or goods installed in it;
2. All money or goods received (proceeds) for the vehicle;
3. All insurance, maintenance, service, or other contracts we finance for you; and
4. All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

**d. Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we decide, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge at the highest rate the law permits.

If the insurance is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance,

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
1. You do not pay any payment on time;
2. You start a proceeding in bankruptcy or one is started against you or your property; or
3. You break any promise in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs, as the law allows.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, you may charge you interest at the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 5. Used Car Buyers Guide.
The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation:**
Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del

refund from what you owe.

**3. YOU MAY PREPAY**

You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**4. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

sin efecto toda disposición en contrario contenida en el contrato de venta.

**6. APPLICABLE LAW**

Federal law and Arizona law apply to this contract.

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

# EXHIBIT B

# LUND CADILLAC COMPANY, LLC.

1311 E. BELL ROAD • PHOENIX, AZ 85022 • (602) 942-4000

www.lundcadillac.com

☑ Purchase Agreement
☐ Lease Agreement

DATE 09-09-09

80230259

| LUND CADILLAC COMPANY HEREINAFTER REFERRED TO AS SELLER | MANAGER DAN BELLMAN | SERVICE ADVISOR |
|---|---|---|

**PLEASE ENTER MY ORDER FOR THE DESCRIBED VEHICLE**

☑ NEW ☐ DEMO ☐ CERTIFIED ☐ USED ☐ CAR ☑ TRUCK

Purchaser's Name(s) in Arabic (full middle name/s)
DAN J EARL

## VEHICLE BEING PURCHASED OR LEASED
### ODOMETER MILEAGE STATEMENT

Federal law (and State law, if applicable) requires that you state the mileage upon transfer of ownership. Failure to complete, or providing a false statement may result in fines and/or imprisonment.

LUND CADILLAC COMPANY, TRANSFEROR, states that the odometer now reads _____ (no tenths) miles and to the best of its knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING-ODOMETER DISCREPANCY.**

Street Address 1311 S CLAIBORNE
City GILBERT   State AZ   Zip 85296
Res. Phone (480) 593-3363   Bus. Phone
E-mail DAN@DANEARL.COM
Cell Phone

| YEAR 2008 | MAKE CADILLAC | MODEL ESCALADE | 4DR 3.6V |
|---|---|---|---|

| LAST PLATE NO. 1 | LICENSE TAB NO. | EXPIRES | GOLD |

SERIAL NO. 1 F K 6 3 8 1 8 K 1 5 7 7 9 0

TRANSFEROR LUND CADILLAC COMPANY 1311 E. BELL ROAD, PHOENIX, ARIZONA 85022

BY X _____

TRANSFEREE SIGNATURE: X _____

CUSTOMER ACKNOWLEDGES THAT THIS VEHICLE IS NOT CERTIFIED.
X _____

CUSTOMER ACKNOWLEDGES THAT EQUITY IN TRADE-IN HAS BEEN TAKEN INTO ACCOUNT IN DETERMINING AMOUNT OF LEASE PAYMENT(S).
X _____

## VEHICLE TRADE-IN
### ODOMETER MILEAGE STATEMENT

Federal law (and State law, if applicable) requires that you state the mileage upon transfer of ownership. Failure to complete, or providing a false statement may result in fines and/or imprisonment.

DAN J EARL

TRANSFEROR'S NAME-PRINT   (BUYER) _____ state that the odometer now reads _____ (no tenths) miles and to the best of its knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING-ODOMETER DISCREPANCY.**

CUSTOMER GUARANTEES UNENCUMBERED TITLE TO TRADE-IN.
X _____

CUSTOMER GUARANTEES THAT TRADE-IN DOES NOT HAVE A RESTORED SALVAGE TITLE CERTIFICATE, AND REPRESENTS TO HIS KNOWLEDGE THAT IT NEVER HAD A RESTORED SALVAGE TITLE CERTIFICATE.
X _____

THE PAYOFF BALANCE(S) OF ANY EXISTING LIEN(S) AND LICENSE FEES ARE ESTIMATED. IF THE ACTUAL PAYOFF BALANCE(S) OR FEES ARE MORE THAN THE ESTIMATE(S) CUSTOMER AGREES TO PAY THE DIFFERENCE.
X _____

| YEAR 2007 | MAKE CADILLAC | MODEL ESCALADE | 4DR SUV |
|---|---|---|---|

| LAST PLATE NO. | LICENSE TAB NO. | EXPIRES | BLACK |

SERIAL NO. 1 F K 6 3 8 2 7 K 2 5 5 9 2 2

I ACKNOWLEDGE THAT THIS IS NOT A NEW VEHICLE, THAT IT IS A USED VEHICLE AND THAT LUND CADILLAC HAS NOT MADE ANY REPRESENTATION THAT THE VEHICLE IS A "DEMONSTRATOR," "BRASS HAT," OR "GM EXECUTIVE" DRIVEN VEHICLE, NOR ANY OTHER REPRESENTATION AS TO ITS FORMER OWNER OR SOURCE.

TRANSFEROR SIGNATURE: X _____

TRANSFEREE LUND CADILLAC COMPANY, 1311 E. BELL ROAD, PHOENIX, ARIZONA 85022

BY X _____

I UNDERSTAND AND AGREE THAT THIS VEHICLE ☐ DOES ☐ DOES NOT QUALIFY FOR THE LUND CADILLAC 14 DAY USED CAR EXCHANGE POLICY WHICH IS AS FOLLOWS:

LIMITED TO ONE EXCHANGE ONLY YOU MUST RETURN YOUR CAR WITHIN 14 DAYS OF THE DATE OF THIS ORDER AND WITH LESS THAN 250 MILES FROM THE STATED ODOMETER READING AT TIME OF PURCHASE MUST BE DELIVERED TO A SALES MANAGER IN THE SAME CONDITION AS WHEN YOU PURCHASED IT YOU MAY EXCHANGE YOUR CAR FOR A USED CAR ON OUR USED CAR LOT OF EQUAL VALUE OR FOR CREDIT ON A USED VEHICLE OF GREATER VALUE. SUBJECT TO FINANCING APPROVAL IN ANY EXCHANGE YOU MAY SELECT ONLY FROM USED CARS NOT ADVERTISED NOR MARKED AT A SALE PRICE. CUSTOMER RESPONSIBLE FOR ANY ADDITIONAL SALES TAX OR LICENSE/REGISTRATION FEES. NO COUPONS, SPECIAL DISCOUNTS OR REBATE OFFER WILL BE ACCEPTED ON EXCHANGE TRANSACTIONS.
X _____

INSURANCE COMPANY AMCO INS
AMCO INS
INSURANCE AGENT
ADDRESS (800) 282-1446

CUSTOMER ASSIGNS ALL MANUFACTURER'S CUSTOMER REBATE(S) TO DEALER.
X _____

Tax No. _____   Policy No. _____

If a used vehicle is sold hereby, the information reflected on the Buyer's Guide for this vehicle is part of this contract and overrides any contrary provision hereof.

**USED CARS SOLD AS IS-NOT EXPRESSLY WARRANTED OR GUARANTEED.**

**NO LIABILITY COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE IS INCLUDED IN THIS CONTRACT.**

NOTICE: WHERE SELLER ARRANGES FINANCING, the seller may receive a portion of the finance charge from the lender.

When signed by Purchaser, this Order shall constitute an irrevocable offer to purchase the vehicle described in, and upon the terms in this Order and, if a time sale, upon the finance terms initially agreed to by Purchaser. This Order shall become binding on Seller only when accepted below by a Sales Manager and, if a time sale, (1) Purchaser's credit has been approved by a financing institution and such institution agrees to purchase a

PPAMO21276O291

| PRICE OF CAR AFTER ANY EQUIPMENT CHARGE(S) | 72,000.00 |
|---|---|
| LESS MANUFACTURER'S CUSTOMER REBATE(S) | 5,500.00 |
| NET SELLING PRICE OF CAR | 66,500.00 |
| LESS TRADE ALLOWANCE | 47,000.00 |
| TAXABLE TOTAL | 19,500.00 |
| SALES TAX | 1,788.50 |
| LICENSE TRANSFER TITLE & REGISTRATION FEE | |

...the relationship between the Dealership and its customers, sometimes disputes may arise. This can lead to misunderstandings and, even with the best of intentions, unresolved disagreements may result. Consequently, even though parties waive certain legal rights, parties often prefer to settle their disputes informally, in the kind of fair and practical way that encourages continued relationships. Arbitration is the referral of a disagreement to one or more impartial persons for resolution without a jury or a judge. It is informal and designed for quick, practical and economical resolution.

Any controversy or claim arising out of or relating to the contract or the breach thereof, or relating in any way to the dealings between you and the Dealership, shall be settled by arbitration before the American Arbitration Association in accordance with its Commercial Arbitration Rules and Supplementary Procedures for Consumer Related Disputes, or the National Arbitration Forum in accordance with its Code of Procedure and Fee Schedule, in a proceeding initiated in Phoenix, Arizona, and judgement upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The undersigned represents that he/she has thoroughly read this provision and the additional provisions of the Arbitration Clause appearing on the reverse side of this Purchase or Lease Agreement and understands that he/she is waiving the right to pursue a lawsuit in court for disputes arising under this contract in favor of Arbitration, which is designed to be a more private, informal, quick and economical means of resolution. We and you waive the right to require arbitration of any dispute involving an amount of $5,000.00 or less, brought and maintained as an individual action.

Purchaser by execution of this Order certifies that he/she is 18 years of age or older and acknowledges having read its terms and conditions and has received a true copy of the Order.

Limitation and disclaimer of warranties and other conditions on reverse side hereof.

| | | | |
|---|---|---|---|
| DEALER SERVICE FEE | | 469 | 00 |
| ARIZONA DEPARTMENT OF ENVIRONMENTAL QUALITY TIRE FEE | | 5 | 00 |
| EXTENDED SERVICE CONTRACT WARRANTY | CHASE BANK | 500.00 | |
| TOTAL DUE | | 29,161.92 | |
| PAYOFF ON TRADE-IN DUE TO 1 | | 33,700.00 | |
| LENDER ADDRESS | | | |
| TOTAL DUE | | 62,161.92 | |
| TOTAL CASH DOWN | RECEIPT NO. DEPOSIT | | |
| | CASH ON DELVY RECEIPT NO. | | |
| BALANCE DUE | | 62,161.92 | |

For "used" vehicles:

**(1) Used Car Implied Warranty of Merchantability:**
THE SELLER HEREBY WARRANTS THAT THE VEHICLE WILL BE FIT FOR THE ORDINARY PURPOSES FOR WHICH THE VEHICLE IS USED FOR 15 DAYS OR 500 MILES AFTER DELIVERY, WHICHEVER IS EARLIER, EXCEPT WITH REGARD TO PARTICULAR DEFECTS DISCLOSED ON THE FIRST PAGE OF THIS AGREEMENT. YOU (THE PURCHASER) WILL HAVE TO PAY UP TO $25.00 FOR EACH OF THE FIRST TWO REPAIRS IF THE WARRANTY IS VIOLATED.

**(2) Waiver of Used Car Implied Warranty of Merchantability:**
ATTENTION PURCHASER: SIGN HERE ONLY IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:

**(2) Renuncia de un Carro Usado que Implica una Garantia de Mercantil:**
TENCION AL COMPRADOR: FIRMA AQUIL SI EL COMMERCIANTE SOLAMENTE LE HAYA DICHO QUE EL VEHICULO TIENE ESTOS SIGUIENTES PROBLEMA(S) Y UD. QUEDA EN ACUERDO DE COMPRAR EL VEHICULO EN ESOS TERMINOS:

1. _____
2. _____
                                          Buyer (Comprador)
3. _____
                                          Buyer (Comprador)

(3) If the Vehicle is purchased for personal use, Seller makes no implied warranty of fitness for any particular purpose, and the implied warranty of merchantability is limited to 15 days or 500 miles after delivery, whichever is earlier, as set forth above, unless Seller also gives Purchaser a written warranty, on its own behalf, with respect to the Vehicle, or, at the time of the sale or within 90 days thereafter, Seller enters into a service contract with Purchaser which applies to the Vehicle. In that event, any implied warranties, arising from the sale of the Vehicle shall be limited to the duration of Seller's written warranty or service contract. If the vehicle is purchased for commercial use, Seller makes no implied warranty of fitness for any particular purpose, and the implied warranty of merchantability is limited to 15 days or 500 miles after delivery, whichever is earlier. In all cases, Seller shall not be liable for any consequential damages arising from any breach of any warranty, express or implied, except for a breach in the implied warranty of merchantability.

PURCHASER _____  DATE __/__/__  ACCEPTED BY MANAGER _____

PURCHASER X_____  DATE __/__/__  FINANCE _____

# PURCHASE AGREEMENT

**ARBITRATION:** In the relationship between the Dealership and its customers, sometimes disputes may arise. This can lead to misunderstandings and, even with the best of intentions, unresolved disagreements may result. Consequently, even though parties waive certain legal rights, parties often prefer to settle their disputes informally, in the kind of fair and practical way that encourages continued relationships. Arbitration is the referral of a disagreement to one or more impartial persons for resolution without a jury or a judge. It is informal and designed for quick, practical and economical resolution.

Any controversy or claim arising out of or relating to this contract or the breach thereof, or relating in any way to the dealings between you and the Dealership, shall be settled by arbitration before the American Arbitration Association in accordance with its Commercial Arbitration Rules and Supplementary Procedures for Consumer Related Disputes, or the National Arbitration Forum in accordance with its Code of Procedure and Fee Schedule, in a proceeding initiated in Phoenix, Arizona, and judgement upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The undersigned represents that he/she has thoroughly read this provision and the additional provisions of the Arbitration Clause appearing on the reverse side of this Purchase or Lease Agreement and understands that he/she is waiving the right to pursue a lawsuit in court for disputes arising under this contract in favor of Arbitration, which is designed to be a more private, informal, quick and economical means of resolution. We and you waive the right to require arbitration of any dispute involving an amount of $5,000.00 or less, brought and maintained as an individual action.

## ARBITRATION CLAUSE

Please read this Arbitration Clause carefully before signing the Agreement. This Arbitration Clause significantly affects your rights in any dispute with us since this Arbitration Clause governs your rights in the event of any sort of "Dispute" (as defined below) with the "Company" (as defined below). The following is a list of some of your rights that will be affected in the event of a Dispute with the Company:

1.  IN THE EVENT OF A DISPUTE BETWEEN YOU AND THE COMPANY, YOU OR THE COMPANY MAY REQUEST THAT THE DISPUTE BE DECIDED BY AN ARBITRATOR, INSTEAD OF A COURT. IF ARBITRATION IS REQUESTED BY EITHER PARTY, BOTH PARTIES RELINQUISH THEIR RESPECTIVE RIGHTS TO TRIAL BY COURT OR JURY. INSTEAD, ANY DISPUTE WILL BE RESOLVED BY A NEUTRAL, THIRD-PARTY ARBITRATOR(S). EVEN IF A SUIT HAS BEEN FILED, YOU OR WE MAY REQUEST ARBITRATION AT ANY TIME BEFORE A COURT RENDERS A JUDGEMENT IN FAVOR OF EITHER PARTY;

2.  ALL DISPUTES SHALL BE ARBITRATED INDIVIDUALLY, AND NOT AS A CLASS ACTION. IF ARBITRATION TAKES PLACE, YOU HEREBY EXPRESSLY RELINQUISH ANY RIGHTS YOU MAY HAVE HAD TO BRING A CLASS ACTION AGAINST THE COMPANY OR OTHERWISE ENGAGE IN A CLASS CLAIM AGAINST THE COMPANY EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER, INCLUDING ANY RIGHT TO CLASS ARBITRATION OR CONSOLIDATION OF SEPARATE ARBITRATIONS;

3.  THE AMOUNT OF INFORMATION OBTAINED DURING THE DISCOVERY PHASE OF THE ARBITRATION PROCESS BY EITHER PARTY WILL LIKELY BE MORE RESTRICTED THAN IN A TRADITIONAL LAWSUIT;

4.  THE LOSING PARTY MAY ASK FOR ANOTHER ARBITRATION HEARING BEFORE A PANEL OF THREE ARBITRATORS, SUBJECT TO THE CHOSEN ORGANIZATION'S APPLICABLE RULES OF ARBITRATION; OTHERWISE, THE ARBITRATOR'S DECISION SHALL BE LEGALLY BINDING ON ALL PARTIES. AS LONG AS JURISDICTION IS PROPER, THE JUDGEMENT UPON ANY AWARD ENTERED BY THE ARBITRATOR MAY BE FILED WITH ANY COURT; AND

5.  THIS AGREEMENT INVOLVES A TRANSACTION IN INTERSTATE COMMERCE, AND NOTWITHSTANDING ANY CONTRARY LANGUAGE HEREIN, ANY ARBITRATION BROUGHT UNDER THIS ARBITRATION CLAUSE SHALL BE SUBJECT TO THE FEDERAL ARBITRATION ACT.

## Scope.

A "Dispute" is any claim or dispute, issue or argument, whether in contract, tort or otherwise (including without limitation, the interpretation and scope of this clause, the arbitrability of any issue and matters relating to the consummation, servicing, collection or enforcement of this Agreement and any retail installment sales agreement, repair order or agreement for the provision of aftermarket products or services), or arising from any relationship or transaction between you and the Company, including a relationship between you and a third party, even if such third party does not sign this Agreement. "Company" means the entity clearly set forth on the front side of this Agreement, including, but not limited to its successors, members, employees, assigns and agents. At either your election or our election (or the election of any such third party), any dispute shall be resolved by neutral binding arbitration and not by court action We and you waive the right to require arbitration of any dispute involving an amount of $5,000.00 or less, brought and maintained as an individual action.

If you notify us by certified mail at the address listed on the front of this agreement within thirty (30) days of this Agreement that you elect not be bound by the terms of this Arbitration Clause, this Arbitration Clause will not apply.

<u>Terms of Arbitration</u>.

Any Dispute is to be arbitrated on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. In the event of arbitration, the applicable rules of the American Arbitration Association, 355 Madison Avenue, Floor 10, New York, New York 10017-4605 (www.adr.org), or the National Arbitration Forum, Box 50191, Minneapolis, Minnesota 55405-0191 (www.arb-forum.com) will govern. You may obtain these rules by visiting the website indicated, or by mail at the addresses indicated.

Arbitrators shall be attorneys or retired judges. The arbitrator(s) will be selected, the arbitration hearing conducted and the award rendered as provided under applicable rules of the American Arbitration Association or the National Arbitration Forum. Notwithstanding anything to the contrary, a written award shall be provided, but no written opinion shall be provided; and the arbitration hearing shall take place in the same county in which you bought or attempted to buy the vehicle. The arbitrator shall apply Arizona or other governing law in making an award.

Notwithstanding which party requests arbitration, the applicable filing fees will be dictated in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer-Related Disputes of the American Arbitration Association or the Code of Procedure and Fee Schedule of the National Arbitration Forum. The arbitrator(s) shall determine the responsibility of all other arbitration costs. The losing party may request a new arbitration under the rules of the American Arbitration Association or the National Arbitration Forum by a three-arbitrator panel. Otherwise the arbitrator's award shall be final and binding on all parties.

Both you and the Company reserve any rights to use any self-help remedies and to seek provisional remedies from a court. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing or answering suit, or seeking or obtaining provisional remedies from court. Judgement upon award shall be entered in any court having jurisdiction. The Federal Arbitration Act shall govern any arbitration under this Arbitration Clause.

<u>Severability</u>.

Should any provision of this Arbitration Clause be found illegal or otherwise unenforceable, that provision shall be deemed severed from the rest of the Arbitration Clause, which shall remain fully intact and enforceable.

# EXHIBIT C

OFFICIAL CHECK

M&I Marshall & Ilsley Bank

000081199

NOT NEGOTIABLE

# EXHIBIT D



Smrh/NaverWley
SARAH S. CURLEY
U.S. Bankruptcy Judge

1 Darrell E. Davis, #011442
2 Ryan J. Lorenz, #019878
  **CLARK HILL PLC**
3 14850 N. Scottsdale Road, Suite 500
  Scottsdale, AZ 85254
4 Telephone: (480) 684-1100
5 Facsimile: (480) 684-1199
  E-Mail: rlorenz@clarkhill.com
6
7 Attorneys for Lund Cadillac LLC

8 ## IN THE UNITED STATES BANKRUPTCY COURT

9 ## FOR THE DISTRICT OF ARIZONA

10
11 In re:                                     Case No. 2:10-bk-27333-SSC
                                             Chapter 13
12 RACHAEL ANNE EARL,
                                             **ORDER FOR RELIEF FROM**
13        Debtor.                            **AUTOMATIC STAY**
14
15 LUND CADILLAC, LLC, an Arizona
   limited liability company,
16
              Movant,
17
18      v.
19 RACHAEL ANNE EARL, Debtor;
   RUSSELL BROWN, Chapter 13 Trustee,
20
              Respondents.
21

22      This matter came before the Court on the motion for relief from stay [doc. 29]

23 filed by Movant Lund Cadillac LLC ("Lund Cadillac"). The Court denied the motion

24 for lack of proper notice [doc. 48]. Lund Cadillac provided proper notice [doc 49] and

25 moved for reconsideration [doc. 53]. The Debtor filed a response to the motion for

26 reconsideration [doc. 57] which the Court treats as an objection to the motion. The

27
28

Court conducted a preliminary hearing [doc. 74]. Good cause appearing, the Court finds and orders as follows:

     A.     The subject matter of Lund Cadillac's motion, a 2008 Cadillac Escalade, VIN 1GYFK63818R157790 ("2008 Escalade"), is not property of the estate pursuant to 11 U.S.C. § 541. Thus, the 2008 Escalade is of inconsequential value. The Court finds and declares that the 2008 Escalade is the property of Lund Cadillac, as of the date of demand for return of the same.

     B.     The automatic stay is hereby clarified to permit Lund Cadillac to recover the 2008 Escalade as its property.

     C.     This order modifying the automatic stay shall apply notwithstanding the conversion or dismissal of this case by the Debtor. The contents of this order are exempt from the provisions of 11 U.S.C. § 524, the discharge injunction.

     Dated and Signed as stated above.

# Exhibit 2

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2011-055722                                                    05/23/2012

                                                    CLERK OF THE COURT
HONORABLE ALFRED M. FENZEL                           W. Tenoever
                                                           Deputy

LUND CADILLAC L L C                          RYAN J LORENZ

v.

DAN J EARL, et al.                           DAN J EARL
                                             1311 S CLAIBORNE AVE
                                             GILBERT AZ  85296

                                             RACHAEL EARL
                                             1311 S CLAIBORNE AVE
                                             GILBERT AZ  85296
                                             MONIQUE WILHITE

### STATUS CONFERENCE SET

        Courtroom 102 - NE

        9:04 a.m.  This is the time set for Telephonic Status Conference Re: Plaintiff's Notice of
Lodging Judgment and Defendants' Motion for Reconsideration and Motion for New Trial.
Plaintiff Lund Cadillac, LLC is represented by counsel, Ryan J. Lorenz.  Defendants Dan J. Earl
and Rachael Earl are present on their own behalves.  Appearing on a special appearance basis for
the Defendants is counsel, Monique Wilhite.

        A record of the proceeding is made by audio and/or videotape in lieu of a court reporter.

        Discussion is held.

        IT IS ORDERED denying Defendants' Motion to Continue Stay of Proceedings and
Discovery.

Docket Code 028                      Form V000A                           Page 1

CV 2011-055722                                                    05/23/2012


IT IS FURTHER ORDERED that Defendants will return the car to the Plaintiff within 48 hours.

IT IS FURTHER ORDERED that Defendants will have until Friday, June 8, 2012 to file their answer.

IT IS FURTHER ORDERED that Plaintiff's Notice of Lodging Judgment will abide receipt of Defendants' answer.

9:11 a.m.  Hearing concludes.

LATER:

The Court has reconsidered its order that Defendants return the car to the Plaintiff.

IT IS ORDERED that the Court's order for return of the car is stayed pending the next Status Conference.

IT IS FURTHER ORDERED setting a Telephonic Status Conference Re: Case Status on **July 20, 2012 at 9:00 a.m.** (15 minutes allotted) in this division.  Counsel for the Plaintiff is to initiate the phone conference (602) 506-7080.


ALERT:  The Arizona Supreme Court Administrative Order 2011-140 directs the Clerk's Office not to accept paper filings from attorneys in civil cases.  Civil cases must still be initiated on paper; however, subsequent documents must be eFiled through AZTurboCourt unless an exception defined in the Administrative Order applies.

Exhibit 3

Darrell E. Davis, #011442
Ryan J. Lorenz, #019878
**CLARK HILL PLC**
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone:    (480) 684-1100
Facsimile:    (480) 684-1199
Email:        ddavis@clarkhill.com
              rlorenz@clarkhill.com

Attorneys for Plaintiff Lund Cadillac, L.L.C.

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| LUND CADILLAC, L.L.C., an Arizona limited liability company, | Case No.  CV2011-055722 |
| Plaintiff, | **DECLARATION OF ALICE CRAPSER** |
| v. | (Assigned to The Honorable Alfred Fenzel) |
| DAN J. EARL and RACHAEL EARL, husband and wife, | |
| Defendants. | |

STATE OF ARIZONA    )
                     ) ss
County of Maricopa   )

I, Alice Crapser, declare under penalty of perjury that the following is true and correct:

1.     I am over the age of nineteen years, am competent to give sworn testimony and have personal knowledge of all matters set forth in this declaration.

2.     I am the Controller for Lund Cadillac, L.L.C. ("Lund Cadillac"), the Plaintiff in the above-captioned case.  I am familiar with Lund Cadillac's file pertaining

to the attempted purchase/sale of a 2008 Cadillac Escalade, VIN 1GYFK63818R157790 ("2008 Escalade"). All of the documents referenced in this declaration are documents kept in the ordinary course of business by Lund Cadillac, which document business activities and are made at or near the time of the events and transactions being recorded and are made by a person whose responsibilities include preparing records of transactions.

3. On September 9, 2009, Dan Earl attempted to purchase the 2008 Escalade. In conjunction with that attempt, Dan Earl executed a Purchase Agreement and a Retail Installment Sale Contract – GMAC Flexible Finance Plan ("Installment Contract").

4. The Purchase Agreement includes language which only requires Lund Cadillac to complete delivery of the vehicle if the person is approved for financing with a lending institution

5. Lund Cadillac could not obtain financing for Dan Earl. Lund Cadillac offered to have Dan Earl execute a contract on substantially the same terms as the original Installment Contract he signed which would have had substantially the same payment as the original Installment Contract. Dan Earl arranged to sign new documents but never appeared at multiple locations and on dates convenient for him to sign.

6. On November 9 and 23, 2009, Lund Cadillac demanded that Dan Earl return the 2008 Escalade.

7. In connection with the possible purchase of the 2008 Escalade, Dan Earl agreed to trade in his 2007 Cadillac Escalade, VIN 1GYFK63827R255922 ("2007 Escalade").

2

8.      Dan Earl represented to Lund Cadillac that if the 2007 Escalade could be paid off, he would have no difficulty obtaining financing for the 2008 Escalade. Lund Cadillac paid $38,784.56 to Solidarity Federal Credit Union, the lender who held a lien against the 2007 Escalade.

9.      It became apparent to Lund Cadillac in 2010, that Dan Earl would continue to refuse to return the 2008 Escalade. As a result, Lund Cadillac elected to sell the 2007 Escalade.  Including the cost to clear title referenced above, Lund Cadillac incurred expenses to prepare the vehicle for sale.  Lund Cadillac's total cost was $41,198.17 (including the loan pay-off).

10.     On March 21, 2011, Lund Cadillac sold the 2007 Escalade for $36,754.00 resulting in a net loss of $4,444.17.

11.     In the course of seeking information and locating the 2008 Escalade, Lund Cadillac incurred $10,969.00 to a licensed investigator, Phillip Rust.  These costs were necessitated and caused by Dan Earl's refusal to return the 2008 Escalade.

I, Alice Crapser, declare under penalty of perjury that the foregoing is true and correct.

DATED:  this _18th_ day of October, 2011.

_Alice Crapser_
Alice Crapser

3

**COPY** of the foregoing mailed
this ___ day of October, 2011, to:

Dan Earl
Rachael Earl
1311 S. Claiborne Avenue
Gilbert, AZ  85296

_(signature)_

4

# Exhibit 4

Lund Cadillac
Used Inventory Purchase Spreadsheet
10/29/2012

| Days | Stock# | Yr | Model | VIN | Make | Actual Cash Value | Auction Fees | Shipping Fees | Writedown | Gross Internal Additions to Units | | | | | Net Additions | Original MMR Value | Subsequent MMR Value | Use of MMR Values | Sales Price |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | | | Internal Additions Amount | Faces Amount | Remove Packs (Credits) | Reduction (Credits) | | | | | | |
| 718 | 280259 | 2008 | ESCALADE | 1GYFK63818R157790 | CADILLAC | 11,997 | | | | 12,910 | 12,910 | | | 12,910 | 33,000 | 33,000 | 33,000 | 33,000 |

143

TOTAL